UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| EBI, LLC<br><br>              Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>              Defendants. | Court No. 26-01230 |

**COMPLAINT**

Plaintiff, EBI, LLC ("EBI" or "Plaintiff"), by and through undersigned counsel, respectfully files this Complaint and avers as follows:

1. Plaintiff is an importer of record and hereby challenges the assessment of certain tariffs and duties imposed upon its imported merchandise, as more particularly set forth herein.

2. President Donald Trump promulgated certain Executive Orders beginning in February 2025 to impose and collect new tariffs and duties (hereinafter "IEEPA duties") pursuant to authority allegedly delegated to the Executive Branch of the United States under the International Emergency Economic Powers Act ("IEEPA").

3. The IEEPA duties have been levied on merchandise imported from virtually all foreign nations, including those from which Plaintiff procures and imports goods.

4. Plaintiff acted as importer of record of merchandise subject to IEEPA duties and paid IEEPA duties on the imported goods that form the basis of this Complaint.

5. The IEEPA duties are, in fact and by operation of law, not authorized by IEEPA. Both the Court of International Trade and the Court of Appeals for the Federal Circuit have so held in *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025) (hereinafter "V.O.S. Selections").

6. The United States Supreme Court granted writs of certiorari from V.O.S. Selections and a related case from the U.S. District Court for the District of Colombia. A decision remains pending as of the date of this filing.

7. Plaintiff respectfully requests that this Court again find, as it and the Federal Circuit did in V.O.S. Selections, that the IEEPA duties imposed by Defendants, as well as the Executive Orders directing their imposition, are unlawful *ab initio*.

8. Plaintiff respectfully contends this Complaint is necessary and required to protect its legal rights because, upon information and belief, even if the U.S. Supreme Court affirms the lower courts in V.O.S. Selections, Plaintiff is not guaranteed a refund of its improperly paid IEEPA tariffs absent judgment and direct relief from this Court.

9. Certain of Plaintiff's entries for which it paid IEEPA tariffs have liquidated and more will liquidate in the future.

10. Upon information and belief, Plaintiff's administrative remedy through protest may be unavailable to it because IEEPA refunds may be deemed a ministerial action not subject to protest under relevant U.S. laws, regulations and Court decisions.

11. Plaintiff therefore files this necessary action to avoid the jeopardy of its entries becoming final as a matter of law without preservation of its rights to refunds of the IEEPA tariffs.

12. Accordingly, Plaintiff seeks: (i) a declaration that the IEEPA duties are unlawful; and (ii) a full and complete refund of all IEEPA duties already paid—and those Plaintiff will continue

to pay—under the Executive Orders at issue, including but not limited to the IEEPA duties paid with entries that have liquidated and those IEEPA duties paid with entries that will liquidate in the future.

## PARTIES

13. Plaintiff, EBI, is a limited liability company created, organized and validly existing under the laws of the State of Virginia with its principal place of business at 745 KENTUCK Rd, Danville, VA 24540-5560. At all times pertinent hereto Plaintiff acted as the official importer of record for all entries subject to IEEPA duties.

14. Defendant United States of America collected the IEEPA duties and is the statutory defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

15. Defendant United States Customs and Border Protection ("CBP") is part of the U.S. Department of Homeland Security headquartered in Washington, D.C., and is responsible for collecting tariffs, duties, and taxes on imported goods. CBP in fact collected IEEPA tariffs from Plaintiff and will continue to collect IEEPA tariffs on its imported goods.

16. Defendant Rodney S. Scott is the Commissioner of CBP and is sued herein in his official government capacity.

17. Defendants are referred to collectively in this complaint as "Defendants" or "CBP."

## JURISDICTION AND STANDING

18. This Court maintains subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

19. This Court has the same powers of a United States District Court at law, in equity, and by statute under 28 U.S.C. §1581 to issue money judgments against the United States and

provide other civil relief as deemed appropriate, including declaratory judgments, injunctions, remand orders, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

20. Plaintiff has standing in this matter because it is the importer of record for goods subject to the unlawful IEEPA duties collected by CBP. As such, Plaintiff is "adversely affected or aggrieved" by agency action within the meaning of the Administrative Procedures Act. 5 U.S.C. §702; 28 U.S.C. §2631(i).

21. Payment of the IEEPA duties pursuant to the challenged Executive Orders has adversely affected and aggrieved Plaintiff through both past real and future anticipated injury in fact.

22. Plaintiff files this action timely within two years after the cause of action first accrues under 28 U.S.C. §1581(i)(1)(B). The Executive Orders that resulted in the collection of the IEEPA duties from Plaintiff were published in the Federal Register beginning on or about February 1, 2025. Moreover, this action is timely filed within two years from the date in which Plaintiff paid the IEEPA duties.

**GENERAL PLEADINGS**

**The IEEPA Tariff Orders**

23. President Trump issued three Executive Orders on February 1, 2025 imposing tariffs on goods imported from Canada, Mexico, and China.[1] Each order invoked and relied upon alleged IEEPA authority, with the President asserting that the tariffs were necessitated by a national emergency. These orders are collectively referred to in this Complaint as the

---

[1] Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border,* 90 Fed. Reg. 9,117 (Feb. 7, 2025) (Mexico); Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) (Canada); Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) (China).

"Trafficking Tariff Orders."

24. On February 5, 2025 and March 3, 2025, the President amended the China Tariff Order.[2]

25. On April 2, 2025, citing trade deficits as a national emergency, President Trump issued a Reciprocal Tariff Order, regulating imports with a reciprocal tariff to address trade practices contributing to large U.S. goods trade deficits. The order imposed a 10% baseline tariff on nearly all imports, effective April 5, and additional tariffs on 57 countries, effective April 9, ranging from 11% to 50%.[3]

26. On April 8, 2025, the President raised the reciprocal tariff on China from 34% to 84% in response to China's retaliatory tariffs.[4]

27. On April 9, 2025, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%.[5] Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

28. In executing the Executive-Order-based tariffs, Defendants amended the Harmonized Tariff Schedule ("HTS"), mandating that goods subject to the challenged tariffs be entered under new codes.

29. On April 14, 2025, several companies filed an action in this Court challenging the legality of

---

[2] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) & Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[3] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025)
[4] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 14, 2025).
[5] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment* (Apr. 9, 2025) 90 Fed. Reg. 15625 (Apr. 15, 2025)

these tariff orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et al.*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders unlawful and the Federal Circuit, sitting *en banc*, affirmed.

30. Since the filing of the *V.O.S. Selections* complaint, President Trump issued further executive orders under IEEPA, imposing additional tariffs and modifying others. As explained below, IEEPA does not authorize such tariffs. Plaintiff here challenges only the orders the Federal Circuit has deemed unlawful ("Challenged Tariff Orders").

### CBP Implementation of IEEPA Duties

31. CBP is charged with the assessment and collection of duties, including the IEEPA duties. 19 U.S.C. §§1500 & 1502.

32. Congress enacted the Omnibus Trade and Competitiveness Act in 1988, creating a new tariff classification system called the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP uses the HTSUS to classify imported goods, applying the tariff rates and statistical categories organized into chapters, headings, and subheadings. 19 U.S.C. § 1202.

33. The United States International Trade Commission ("USITC") is responsible for publishing and maintaining the HTS pursuant to presidential orders. 19 U.S.C. §§ 1202, 3005, 3006. Judicial decisions confirm that only the President has the authority to modify the HTSUS. *See Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

34. For all goods entering the United States, CBP is charged with confirming their classification under the HTS and subsequently assessing and collecting any duties owed in accordance with the tariff rates set forth therein. 19 U.S.C. §§ 1202, 1500, 1502.

**Liquidation**

35. CBP regulations define "liquidation" as the final determination of duties owed on consumption or drawback entries. 19 C.F.R. § 159.1.

36. When goods enter the United States, the importer of record typically pays estimated duties based on its customs declaration, which states the goods' value, origin, and HTSUS classification. 19 U.S.C. § 1484. CBP then reviews the declaration and may inspect the shipment.

37. CBP subsequently fixes the final appraisement by confirming the goods' value, classification, duty rate, and the total duty payable. 19 U.S.C. § 1500.

38. After CBP fixes the final duty amount, it liquidates the entry and informs the importer of record whether they owe more or are entitled to a refund. 19 U.S.C. § 1504(b).

39. By statute, liquidation must take place within one year unless extended. 19 U.S.C. § 1504(a). CBP generally completes liquidation by roughly day 314 after entry and usually posts a notice online.

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. See 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. The Court may — and has in fact — use its equitable powers to stay liquidation. *See In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021).

42. After liquidation of an entry, if the liquidation is of a type that can be protested, the importer has 180 days under 19 U.S.C. § 1514 to file a protest asking CBP to reliquidate. But liquidations based on ministerial (i.e., nondiscretionary) actions — such as a straight calculation of duties — may not be protestable. *See id.; See also Xerox Corp. v. United States*,

289 F.3d 792 (Fed. Cir. 2002); *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024); *Mitsubishi Elecs. Am. V. United States*, 44 F.3d 973 (Fed. Cir. 1994).

43. Both this Court and the Federal Circuit have warned that importers may not be able to reclaim duties paid on entries once liquidation is final—even if the tariff is later ruled invalid. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365–66; *Target Corp. v. United States,* 134 F.4th at 1316.

**IEEPA Does Not Authorize the Duties & Courts Have Held the IEEPA Duties Invalid**

44. The Challenged Tariff Orders rely on several statutory authorities: the International Emergency Economic Powers Act (IEEPA, 50 U.S.C. § 1701 et seq.), the National Emergencies Act (NEA, 50 U.S.C. § 1601 et seq.), § 604 of the Trade Act of 1974 (as amended, 19 U.S.C. § 2483), and § 301 of title 3 of the United States Code (3 U.S.C. § 301).

45. None of the statutes the government invokes provide clear authority for the President to impose tariffs. The administration and CBP rely solely on IEEPA to justify and collect the so-called "IEEPA duties," but that statute does not explicitly authorize tariff or duty imposition. Recent judicial rulings reinforce that IEEPA's grant of power to "regulate … importation" does not equate to a grant of taxing or tariff authority.

46. On May 28, 2025, the CIT granted summary judgment for the plaintiffs in *V.O.S. Selections* and permanently blocked enforcement of the disputed IEEPA tariffs. That decision was appealed to the Court of Appeals for the Federal Circuit.

47. On August 29, 2025, the *en banc* Federal Circuit affirmed the CIT's decision in *V.O.S. Selections, Inc. v. Trump*, holding that the IEEPA-imposed tariffs exceed presidential authority. 149 F.4th 1312 (Fed. Cir. 2025); cert. granted, No. 25-250 (Sept. 9, 2025).

48. A United States D.C. District Court ruled in *Learning Resources, Inc. v. Trump* that IEEPA

does not permit the imposition of tariffs. 784 F. Supp. 3d 209 (D.D.C. 2025). The government appealed, but before further proceedings, the Supreme Court granted certiorari in that case and the related *V.O.S. Selections* case, consolidating them for oral argument on November 5, 2025.

### Plaintiff Paid IEEPA Duties

49. Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

50. The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have already begun to liquidate.

51. CBP has advised importers that it will not extend liquidation for entries subject to IEEPA tariffs.

### STATEMENT OF CLAIMS
### COUNT I
### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES*

52. Plaintiff incorporates by reference as if copied herein in extenso paragraphs 1-51 above by reference.

53. In *V.O.S. Selections, Inc. v. Trump*, 772 F. Supp. 3d 1350 (CIT 2025), subsequently affirmed by the Federal Circuit at 149 F.4th 1312 (Fed. Cir. 2025), the Court of International Trade concluded that the President lacked statutory authority under IEEPA to impose the Challenged Tariff Orders.

54. As the *V.O.S. Selections, Inc. v. Trump* court explained, IEEPA empowers the President only to "investigate, regulate, or prohibit" certain foreign-related transactions during a declared national emergency — such as imports, exports, currency transfers, or the handling of foreign-owned property. IEEPA does not authorize the imposition of tariffs or duties on imports, and neither its text nor its legislative history contains any clear delegation to permit

the President to set tariff rates.

55. The Federal Circuit upheld the CIT's ruling, concluding that Congress—when it enacted IEEPA — did not grant the President authority to impose the tariffs at issue.

56. The Challenged Tariff Orders mirror those struck down in V.O.S. Selections and rest solely on IEEPA. Because IEEPA does not authorize the imposition of such tariffs, the Orders exceed the President's statutory authority — making them unlawful and void from the start as applied to the Plaintiff.

57. Plaintiff requests that, consistent with controlling Federal Circuit precedent, the Court declare the Challenged Tariff Orders invalid as to Plaintiff; enjoin CBP from enforcing them against Plaintiff; and require CBP to return all IEEPA duties collected from Plaintiff, plus statutorily mandated interest.

## COUNT II
## ALTERNATIVE CLAIM – THE CHALLENGED ORDERS ARE UNCONSTITUTIONAL

58. Plaintiff incorporates by reference as if copied herein in extenso paragraphs 1-57 above by reference.

59. In the alternative, even if this Court were to construe IEEPA as authorizing tariffs, the IEEPA-based Tariff Orders would remain unlawful — because such an interpretation would amount to an impermissible delegation of Congress's legislative power to the President, in violation of the Nondelegation Doctrine.

60. The U.S. Constitution vests in Congress exclusively the power to "lay and collect… Duties". U.S. CONST. art. I, § 8, cl. 1.

61. Under separation-of-powers principles and controlling Supreme Court precedent, Congress may not delegate its legislative power to the President without at least providing an

intelligible principle to direct and meaningfully limit the President's exercise of that power. IEEPA contains no such intelligible principle — it affords the President sweeping discretion without statutory constraints or standards.

62. Plaintiff respectfully requests that the Court declare the IEEPA Tariff Orders unconstitutional as applied to Plaintiff, enjoin CBP from enforcing them against Plaintiff and order CBP to refund all IEEPA duties collected from Plaintiff, with applicable interest.

## COUNT III
## DECLARATORY RELIEF

63. Plaintiff incorporates by reference as if copied herein in extenso paragraphs 1-62 above by reference.

64. A United States court may, under 28 U.S.C. § 2201(a), declare the rights or legal relations of any interested party who requests such a declaration.

65. There is a real and immediate dispute over whether the President may lawfully impose the challenged IEEPA tariffs and whether CBP may enforce and collect them — making this a proper case for declaratory or injunctive relief.

66. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties.

67. This Court may properly exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful as applied to Plaintiff, declare that CBP lacks authority to implement or collect the associated tariffs, and thereby grant relief to Plaintiff.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests and prays that the Court enter judgment in its favor and grant the following relief as to Plaintiff:

(a) Judgment ruling that the President lacks authority under IEEPA to impose tariffs;

(b) Judgment ruling that the Challenged Tariff Orders are *ultra vires* and void *ab initio* as applied to Plaintiff;

(c) Judgment ruling that, as to Plaintiff, U.S. Customs and Border Protection (CBP) lacks authority to implement or collect any tariffs under the Harmonized Tariff Schedule of the United States (HTSUS) based on the Challenged Tariff Orders;

(d) Judgment enjoining CBP, as to Plaintiff, from imposing or enforcing any such tariffs;

(e) Judgment and Order directing Defendants to refund all IEEPA-derived tariff duties collected from Plaintiff — with costs, interest and fees as allowed by law or in equity;

(f) Judgment and Order directing Defendants to pay an award of reasonable costs and attorneys' fees incurred by Plaintiff in bringing this action, in an amount to be presented and determined at the trial of this matter;

(g) Judgment and Order directing Defendants to pay an award of interest on the refunded duties at the rate authorized by 28 U.S.C. § 1961, any other applicable statute or as compelled by equity, from the date of payment of the duties to the date of refund; and

(h) All such general, special, equitable and other further relief as the Court deems just and appropriate.

Respectfully submitted:

/s/ *Edward T. Hayes*
EDWARD T. HAYES, ESQ.
**LEAKE ANDERSSON L.L.P.**
1100 Poydras Street, 17th Floor
New Orleans, LA 70163
Tel: (504) 585-7500
Fax: (504) 585-7775
E-mail: ehayes@leakeandersson.com
***Attorneys for Plaintiff*** EBI, LLC

Dated: February 26, 2026